1  Diane M. Romaniuk, Illinois Bar #0341649
2  dromaniuk@cftc.gov
   Robert T. Howell, Illinois Bar #6286438
3  rhowell@cftc.gov
4  Rosemary Hollinger, Illinois Bar #3123647
   rhollinger@cftc.gov
5  Attorneys for Plaintiff
6  U.S. Commodity Futures Trading Commission
   525 W. Monroe, Suite 1100
7  Chicago, Illinois 60661
8  Tel. 312-596-0700; Fax 312-596-0714

9  Kent Kawakami, CA. Bar No. 149803
10 kent.kawakami@usdoj.gov
   Assistant United States Attorney
11 United States Attorney's Office
12 Central District of California - Civil Division
   300 North Los Angeles Street, Room 7516
13 Los Angeles, CA 90012
14 Telephone: (213) 894-4858; Facsimile: (213) 894-2380
   Local Counsel
15

16             UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT CALIFORNIA
17                  SOUTHERN DIVISION

18 ─────────────────────────
19 UNITED STATES                    )
20 COMMODITY FUTURES                )
   TRADING COMMISISION              )      Case No:
21                                  )
                                    )
22         Plaintiff,               )      **COMPLAINT FOR**
                                    )      **INJUNCTIVE AND OTHER**
23         vs.                      )      **EQUITABLE RELIEF AND**
                                    )      **CIVIL MONETARY**
24 FRANK J. COLLINS and             )      **PENALTIES UNDER THE**
   GERARD SUITE, a/k/a RAWLE        )      **COMMODITY EXCHANGE**
25 GERARD SUITE, a/k/a JERRY        )      **ACT**
   SUITE, a/k/a JERRY SNEAD and     )
26 STA OPUS NR LLC                  )
27                                  )
                                    )
28         Defendants.              )
   ─────────────────────────        )

                        1

## I.   SUMMARY

1.     From at least January 2013 to the present (the "relevant period"), Frank J. Collins ("Collins") and Gerard Suite, a/k/a Rawle Gerard Suite, a/k/a Jerry Suite, a/k/a Jerry Snead ("Suite"), through STA Opus NR LLC ("STA Opus") (collectively "Defendants"), fraudulently solicited and accepted at least $1.6 million from at least 30 customers for purposes of operating a commodity pool to trade commodity futures contracts on their behalf.  Collins formed STA Opus, a Delaware limited liability company, to operate the pool and receive pool participants' funds.  Defendants traded a portion of the funds they accepted through commodity futures trading accounts carried in the name of STA Opus. Defendants defrauded pool participants by:  i) failing to disclose that sanctions were entered against Suite revoking his registration with the U.S. Commodity Futures Trading Commission ("Commission" or "CFTC"), enjoining him from violating the California Corporations Act, and ordering him and entities acting in concert with him to pay $2.5 million in restitution and fines for conducting business as an unregistered investment advisor in California; ii) falsely representing that STA Opus' pool had positive annual rates of return during the relevant period, when, in fact, STA Opus' three commodity futures trading accounts had a negative return, losing virtually all of the funds Defendants committed to trading; iii) issuing false account statements to participants that misrepresented the value of the participants' respective interests in the pool and

2

concealed Defendants' misappropriation of their monies; and iv) misappropriating at least $1.25 million of participants' monies.

2.      Additionally, during the relevant period, STA Opus engaged in the forgoing misconduct without benefit of registration with the Commission as a commodity pool operator ("CPO").  Similarly, during the relevant period, Collins and Suite engaged in their misconduct without benefit of registration as associated persons ("APs") of STA Opus, a CPO.

3.      By virtue of this conduct and the conduct further described herein, Defendants have engaged, are engaging in, or are about to engage in fraud in violation of Sections 4b(a)(1)(A)-(C), 4o(1) and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6o(1) and 9(1) (2012) and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2015).  Moreover, STA Opus acted as a CPO without the benefit of required registration, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).  Similarly, Collins and Suite acted as APs of a CPO, STA Opus, without the benefit of registration, in violation of Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2015).

4.      Unless restrained and enjoined by this Court, the Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and in similar acts and practices, as more fully described below.

## II.   JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

6.      Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1(e) (2012), in that the Defendants transacted business in this District, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District.

## III.   THE PARTIES

### PLAINTIFF

7.      Plaintiff Commission is an independent federal regulatory agency that is charged by Congress with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.* (2012) and the regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2015).

### DEFENDANTS

8.      Defendant Frank J. Collins is 66 years old and resides in Garden Grove, California.  Between December 1999 and November 2008, he was registered with the Commission as an AP of six introducing broker ("IB") firms

4

and one futures commission merchant ("FCM").  He is not currently registered with the Commission in any capacity.  On bank account, trading account and incorporation documents, Collins is listed as the President, Chief Executive Officer, and Manager of STA Opus.

9.      Defendant <u>Gerard Suite, a/k/a Rawle Gerard Suite, a/k/a Jerry Suite, a/k/a Jerry Snead</u>, is 55 years old and resides in Irvine, California.  He was registered as an AP of First Commodity Corp. of Boston, a registered FCM, from January 1, 1982 to April 19, 1983, and as a principal and an AP of Chase Commodities Inc., a registered commodity trading advisor ("CTA") and CPO from December 2, 1985 until May 3, 1990, when his registration was revoked by the Commission.

10.      Specifically, on December 30, 1987, the National Futures Association's ("NFA") Membership Committee determined that Suite was disqualified from registration with the Commission pursuant to Section 8a(2)(e) of the Act, 7 U.S.C. § 8a(2)(e), based on the findings of the Arizona Corporation Commission ("ACC") that Suite engaged in fraudulent conduct in violation of the Arizona Securities Laws.  In particular, the ACC found that Suite engaged in transactions, practices or courses of business which operated or would operate as a fraud and deceit; offered to sell or sold unregistered securities through material misrepresentations and omissions of material fact; and offered to sell or sold those securities without being registered as a dealer or salesman under the Arizona

Securities Act.  The NFA's Membership Committee found that Suite failed to submit any mitigation or rehabilitation evidence to establish that, notwithstanding the existence of his statutory disqualification, his continued registration would be in the public interest.  The Membership Committee of the NFA, therefore, issued an order revoking Suite's registration.  Suite petitioned the Commission for review of the NFA Membership Committee's order and on April 18, 1990, the Commission issued an opinion and order affirming the NFA's decision to disqualify Suite from registration with the Commission and to revoke his registration.

11.     On July 25, 2006, the California Corporations Commissioner issued a Desist and Refrain Order against Suite finding that between June 2004 and January 2005, Suite offered and sold securities to an investor, without authorization, and that he did so by means of oral and written communications, including untrue statements of material facts or omitted to state material facts in order to make his statements not misleading.

12.     On January 18, 2011, the California Corporations Commissioner filed a Complaint against Suite, and entities acting in concert with Suite, in Los Angeles County Superior Court, Case No. BC452780, alleging that Suite and his related entities, continued to sell unlicensed and unregistered securities as an unlicensed and unregistered Investment Advisor and by so doing, violated the California Corporations Commissioner's Order dated July 25, 2006.  On January 4, 2012, the

Los Angeles County Superior Court entered judgment against Suite and the entities acting in concert with him, and ordered them to pay a total of $2.5 million in restitution and fines.  The Superior Court also entered an injunction against Suite, enjoining him from violating the Corporations Code Section 25230, by conducting business as an investment advisor in California without first having applied for and secured a certificate authorizing him to conduct business as an investment advisor.

13.     <u>STA Opus NR LLC</u> is a Delaware limited liability company that was formed by Collins on September 19, 2012.  STA Opus' current status with the state of Delaware is "Not in Good Standing."  STA Opus has never been registered with the Commission in any capacity.

## IV.   <u>FACTS</u>

### A.   <u>Statutory Background</u>

14.     A "commodity pool" is defined in Commission Regulation 4.10(d)(1), 17 C.F.R. § 4.10(d)(1) (2015), as any investment trust, syndicate or similar form of enterprise operated for the purpose of trading commodity interests.

15.     A "commodity pool operator" is defined in Section 1a(11) of the Act, 7 U.S.C. § 1(a)(11) (2012), as any person engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts or receives from others, funds, securities, or property, either directly or through capital

contributions, the sale of stock or other forms of securities or otherwise, for the purpose of trading in commodity interests.

16.   An "associated person of a commodity pool operator" is defined in Commission Regulation 1.3(aa)(3), 17 C.F.R. § 1.3(aa)(3) (2015), in relevant part, as any natural person who is associated with a CPO as a partner, officer, employee, consultant or agent to a CPO (or any natural person occupying a similar status or performing similar functions), in any capacity which involves the solicitation of funds, securities or property for a participation in a commodity pool.

17.   A "participant" is defined in Commission Regulation 4.10(c), 17 C.F.R. § 4.10(c) (2015), as any person who has any direct financial interest in a commodity pool.

**B.**   **Defendants Fraudulently Solicited Pool Participants**

18.   During the relevant period, Defendants solicited prospective pool participants through aggressive telephone and email solicitations.  Initially, Suite made cold calls to prospective pool participants, soliciting them to invest in STA Opus' Incubator Fund, which traded various commodities, including soybeans and unleaded gas.  In his phone solicitations, Suite touted that STA Opus employed professionals with particular expertise in managed futures products, and that the trading these professionals conducted on behalf of the pool was consistently profitable.  Defendants' sales pitch emphasized that a pool participant would not be subject to margin calls and the risk of losing more than one's original investment,

while an investor trading for his own account would incur those risks.  Typically, Suite telephoned prospective pool participants numerous times, until they expressed some interest in investing in STA Opus' pool.

19.    During his telephone calls, Suite advised prospective pool participants to check the website, www.another-winningtrade.com, which described STA Opus as operating a Fund "utilizing the STA Opus Trading System in conjunction with other trend following Systems managed by a select group of independent trading advisors that engage in the speculative trading of futures and forward contracts, while providing limited liability."  The website named Collins as STA Opus' contact person.

20.    Additionally, Defendants sent emails from tbtanalysis@cox.net to prospective pool participants and pool participants containing promotional material, including monthly and yearly performance charts for STA Opus' pool. These performance charts falsely represented the pool's trading performance.  For example, some of the performance charts represented that the pool had an annual rate of return of 132.77% in 2012, 78.117% in 2013, 64.39% in 2014, and an 11-month rate of return of 60.05% in 2015.  Other performance charts represented that the pool had an annual rate of return of 132.77% in 2012, 78.117% in 2013 and 57.60% in 2014.  In fact, STA Opus' three commodity futures trading accounts carried at a registered FCM had a negative return, losing virtually all of the funds Defendants committed to trading.

21.     During Defendants' telephone and email solicitations, Defendants failed to disclose to current and prospective pool participants sanctions entered against Suite by the Commission and the state of California, namely:  i) that in May 1990, the Commission revoked Suite's registration as a principal and an AP of Chase Commodities Inc., a registered CTA and CPO, and disqualified him from registration with the Commission because he engaged in fraudulent conduct in violation of the Arizona securities laws;  and ii) that in January 2012, the Los Angeles County Superior Court ordered Suite, and entities acting in concert with him, to pay a total of $2.5 million in restitution and fines for conducting business as an unregistered investment advisor and for violating a previous Desist and Refrain Order issued by the California Corporations Commissioner in July 2006.

22.     After prospective pool participants expressed an interest in investing in STA Opus' pool, Defendants sent them Account Funding Instructions.  These instructions directed prospective pool participants to send wires to a bank account at JP Morgan Chase Bank NY ("Chase") or to issue checks payable to STA Opus NR LLC, at an address in Irvine, CA.  STA Opus' bank account at Chase was opened by Collins, who signed bank documents representing that he was STA Opus' Manager.

23.     After pool participants sent their initial investment to STA Opus, Suite, and sometimes Collins, contacted them by telephone and email, urging them to invest additional funds with STA Opus.  Specifically, Suite and Collins told pool

participants that they should upgrade their accounts to an ISTP Swing Trade account ("Swing Trade"), which would "add units" to their current pool accounts and trade different commodities, thus allowing participants to diversify their accounts.

24.     Moreover, after pool participants made their initial investment in the pool, Defendants devised a scheme to further defraud some participants, through the use of unauthorized withdrawals from a participant's bank account. Specifically, Suite and Collins told some pool participants that they could invest additional money with STA Opus, by sending Defendants "voided" personal checks, which provided Defendants with pool participants' bank account numbers and bank routing information, thereby allowing Defendants to withdraw funds directly from participants' bank accounts.

25.     During the relevant period, some pool participants sent Defendants voided personal checks.  Defendants used the bank routing information and account numbers on pool participants' voided checks, to have "new" checks issued that were payable to STA Opus.  The checks Defendants caused to be issued contained a statement on the face of the check that a "signature was not required," because "customer authorization was obtained," thereby allowing Defendants to withdraw funds directly from participants' bank accounts.  Defendants utilized this scheme to make unauthorized withdrawals from at least one participant's bank account.

11

26.     During the relevant period, at least 30 pool participants transferred a total of at least $1.6 million to STA Opus, for initial investment in the pool and to add additional units to their pool accounts by opening Swing Trade accounts. Participants transferred their funds to STA Opus by either issuing checks to STA Opus, which were then deposited into STA Opus' bank account at Chase, by wiring funds to the Chase bank account, or by providing voided checks to Defendants, which Defendants then used to have checks issued that were payable to STA Opus, as described in Paragraph 25 above.

**C.     STA Opus' Actual Commodity Trading Performance Record**

27.     During the relevant period, Collins opened a total of three commodity trading accounts in STA Opus' name at a registered FCM.  During that time, Defendants deposited a total of approximately $413,350 into the three accounts and withdrew a total of approximately $56,729 from the accounts.  Over the life of these accounts, Defendants lost approximately $356,081 trading commodity futures.  The current net liquidating value of the trading accounts at the FCM is approximately $540.

**D.     Defendants Made Material Misrepresentations and Omissions to Pool Participants and Caused False Account Statements to Be Sent to Them**

28.     During the relevant period, Defendants made material misrepresentations and failed to disclose material facts to pool participants regarding the profitability of the pool.  Specifically, Defendants falsely represented

to participants that STA Opus' pool had positive annual rates of return during the relevant period, when, in fact, STA Opus' three commodity futures trading accounts had a negative return, losing virtually all of the funds Defendants committed to trading.  Moreover, as described in detail in Paragraph 21 above, Defendants failed to tell current and prospective pool participants about sanctions entered against Suite by the Commission and the state of California.

29.    Defendants also caused false account statements to be sent to pool participants that misrepresented the value of the participants' respective interests in the pool and concealed Defendants' misappropriation of their monies.  These misrepresentations lulled pool participants into investing additional funds in the pool.

**E.    Defendants Misappropriated Pool Participants' Monies**

30.    At least five pool participants have attempted to withdraw funds from their pool accounts and have been unable to do so.  While these pool participants followed Defendants' instructions by executing written Withdrawal Requests, requesting the return of monies invested in Defendants' pool, the Defendants have failed to honor the withdrawal requests.  In fact, after receiving pool participants' withdrawal requests, Defendants typically end communication with participants, refusing to accept their telephone calls and ignoring their emails.

31.    During the relevant period, Defendants misappropriated approximately $1.25 million of pool participant monies for their own benefit, using

those funds for personal expenditures, including over $225,000 spent on travel,

dining, shopping excursions and golf.

## V.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT

## COUNT I

### Violations of Section 4b(a)(1)(A),(C) the Act:  Fraud by Misrepresentations and Misappropriation

32.     The allegations set forth in paragraphs 1 through 31 are re-alleged and incorporated herein.

33.     Sections 4b(a)(1)(A),(C) of the Act, 7 U.S.C. §§ 6b (a)(1)(A),(C) (2012), make it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person – (A) to cheat or defraud or attempt to cheat or defraud the other person; … or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for the other person.

34.     During the relevant period, Defendants violated Sections 4b(a)(1)(A),(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A),(C) (2012), in that they cheated or defrauded or attempted to cheat or defraud and willfully deceived or attempted to deceive pool participants or prospective pool participants by:  i) failing to

disclose that sanctions were entered against Suite revoking his registration with the Commission, enjoining him from violating the California Corporations Act, and ordering him and entities in concert with him, to pay $2.5 million in restitution and fines for conducting business as an unregistered investment advisor in California; ii) falsely representing that STA Opus' pool had positive annual rates of return during the relevant period, when, in fact, STA Opus' three commodity futures trading accounts had a negative return, losing virtually all of the funds Defendants committed to trading; and iii) misappropriating at least $1.25 million of participants' monies.

35.     Defendants engaged in this violative conduct in or in connection with orders to make, or the making of, contracts of sale of commodities, for future delivery, made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of such other persons.

36.     Collins and Suite were acting as agents of STA Opus when they violated the Act with regard to STA Opus' pool participants, therefore, STA Opus, as Collins' and Suite's principal, is liable for Collins' and Suite's acts constituting violations of Sections 4b(a)(1)(A),(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A),(C) (2012), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2015).

37.     Each material misrepresentation or omission and each misappropriation made during the relevant time period, including but not limited to

those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4b(a)(1)(A),(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A),(C) (2012).

## COUNT II

### Violations of Section 4b(a)(1)(B) of the Act:  Fraud by False Statements

38.    The allegations set forth in paragraphs 1 through 31 are re-alleged and incorporated herein.

39.    Section 4b(a)(1)(B)of the Act, 7 U.S.C. § 6b (a)(1)(B) (2012), makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person – … (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record.

40.    Defendants violated Section 4b(a)(1)(B) of the Act, 7 U.S.C. § 6b(a)(1)(B) (2012), in that Defendants willfully made or caused to be made false statements to their pool participants that misrepresented the value of the participant's respective interest in the pool and concealed Defendants' misappropriation of their monies.

41.    Defendants engaged in this violative conduct in or in connection with orders to make, or the making of, contracts of sale of commodities, for future

delivery, made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of such other persons.

42.   Collins and Suite were acting as agents of STA Opus when they violated the Act with regard to STA Opus' pool participants, therefore, STA Opus, as Collins' and Suite's principal, is liable for Collins' and Suite's acts constituting violations of Section 4b(a)(1)(B)of the Act, 7 U.S.C. § 6b(a)(1)(B) (2012), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C.§ 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2015).

43.   Each false report or statement made during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(1)(B) of the Act, 7 U.S.C. § 6b(a)(1)(B) (2012).

## COUNT III

### Violations of Section 4o(1) of the Act:  Fraud by a CPO and by APs of a CPO

44.   The allegations set forth in paragraphs 1 through 31 are re-alleged and incorporated herein.

45.   During the relevant time period, STA Opus acted as a CPO with regard to STA Opus' pool, in that it engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise and in connection therewith, solicited, accepted or received funds, securities or property from others

17

for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.

46.     Similarly, with regard to STA Opus' pool, Collins and Suite acted as APs of a CPO in that they solicited funds for STA Opus' pool.

47.     During the relevant period, STA Opus, Collins and Suite violated Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012), in that as a CPO and APs of a CPO, they directly or indirectly employed or are employing a device, scheme, or artifice to defraud their commodity pool participants, or have engaged or are engaging in transactions, practices or a course of business which operated as a fraud or deceit upon commodity pool participants by:  i) failing to disclose that sanctions were entered against Suite revoking his registration with the Commission, enjoining him from violating the California Corporations Act, and ordering him and entities in concert with him, to pay $2.5 million in restitution and fines for conducting business as an unregistered investment advisor in California; ii) falsely representing that STA Opus' pool had positive annual rates of return during the relevant period, when, in fact, STA Opus' three commodity futures trading accounts had a negative return, losing virtually all of the funds Defendants committed to trading; iii) issuing false account statements to participants that misrepresented the value of the participants' respective interests in the pool and concealed Defendants' misappropriation of their monies; and iv) misappropriating at least $1.25 million of participants' monies.

48.     Defendants engaged in such acts, directly or indirectly, by use of the mails and other means or instrumentalities of interstate commerce.

49.     Collins and Suite were acting as agents of STA Opus when they violated the Act with regard to STA Opus' pool participants and, therefore, STA Opus as Collins' and Suite's principal, is liable for Collins' and Suite's acts constituting violations of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2015).

50.     Each act of making false reports, false statements, and material omissions, and each misappropriation that occurred during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012).

## **COUNT IV**

### **Violations of Section 6(c)(1) of the Act and Regulation 180.1(a):  Fraud by Manipulative or Deceptive Devices or Contrivances**

51.     The allegations set forth in Paragraphs 1 through 31 are realleged and incorporated herein.

52.     Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), makes it unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any

registered entity, any manipulative or deceptive device or contrivance in contravention of any Commission rule or regulation.

53.     Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2015), makes it unlawful, *inter alia*, for any person, directly or indirectly, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit on any person.

54.     During the relevant period, Defendants violated Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2015), by knowingly employing manipulative or deceptive devices or contrivances in connection with commodities for future delivery on or subject to the rules of a registered entity, including:  i) failing to disclose that sanctions were entered against Suite revoking his registration with the Commission, enjoining him from violating the California Corporations Act, and ordering him and entities in concert with him, to pay $2.5 million in restitution and fines for conducting business as an unregistered investment advisor in California; ii) falsely representing that STA

Opus' pool had positive annual rates of return during the relevant period, when, in fact, STA Opus' three commodity futures trading accounts had a negative return, losing virtually all of the funds Defendants committed to trading; iii) issuing false account statements to participants that misrepresented the value of the participants' respective interests in the pool and concealed Defendants' misappropriation of their monies; and iv) misappropriating at least $1.25 million of participants' monies.

55.     Defendants committed such acts intentionally or recklessly.

56.     Collins and Suite were acting as agents of STA Opus when they violated the Act with regard to STA Opus' pool participants, therefore, STA Opus, as Collins' and Suite's principal, is liable for Collins' and Suite's acts constituting violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012) and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2015), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2015).

57.     Each act of employing a manipulative or deceptive device or contrivance, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2015).

## <u>COUNT V</u>

### <u>Violations of Sections 4m(1) and 4k(2) of the Act:  Failure to Register as a CPO and as APs of the CPO</u>

58.     Paragraphs 1 through 31 are re-alleged and incorporated herein.

59.     With certain specified exceptions and exemptions, not applicable here, all CPOs are required to be registered with the Commission, pursuant to Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).  Similarly, with certain specified exceptions and exemptions, not applicable here, all APs of CPOs are required to be registered with the Commission, pursuant to Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012).

60.     STA Opus acted as a CPO during the relevant period in that it accepted and received funds from pool participants for the purpose of trading commodity futures contracts, and Collins and Suite acted APs of a CPO during the relevant period in that they solicited funds for the pool.  In connection with such conduct, STA Opus, Collins and Suite used the mails and other means or instrumentalities of interstate commerce, directly or indirectly, to engage in their businesses as a CPO and APs of a CPO.

61.     STA Opus engaged in the activities described in Paragraphs 1 through 31 and 60, without the benefit of registration as a CPO in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), and Collins and Suite engaged in their solicitation activities for STA Opus without the benefit of registration as APs of a CPO in violation of Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012).

62.     STA Opus violated Section 4k(2) of the Act by allowing Collins and Suite to act as its APs.

63.     Each use of the mails or any means or instrumentality of interstate commerce in connection with their business as a CPO or APs of a CPO without proper registration during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4m(1) of the Act, 7 U.S.C. §§ 6m(1) (2012), and 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012).

## VI.    RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

A.     An order finding Defendants liable for violating:  Sections 4b(a)(1)(A)-(C), 4k(2), 4m(1), 4o(1) and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6k(2), 6m(1), 6o(1) and 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2015);

B.     An order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, from, directly or indirectly, engaging in conduct in violation of Sections 4b(a)(1)(A)-(C), 4k(2), 4m(1), 4o(1) and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6k(2), 6m(1), 6o(1) and 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2015).

C.   An order of permanent injunction enjoining Defendants and all persons insofar as they are acting in the capacity of their agents, servants, employees, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendants who receive actual notice of such order by personal service or otherwise, from engaging, directly or indirectly, in:

1.   Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012);

2.   Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2015), for his own personal account or for any account in which he has a direct or indirect interest;

3.   Having any commodity interests traded on his behalf;

4.   Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests

5.   Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

6.   Applying for registration or claim exemption from registration with the Commission in any capacity, and engage in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2015); and/or

7.   Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2015)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)) registered, exempted from registration or required to be registered with the

Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2015).

D.    An order requiring the Defendants and any third party transferee and/or successors thereof, to disgorge to any officer appointed or directed by the Court all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act as described herein, including pre-judgment and post-judgment interest;

E.    An order directing the Defendants and any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of customers whose funds were received by them as a result of the acts and practices that constituted violations of the Act, as described herein;

F.    An order requiring Defendants to make restitution by making whole each and every customer whose funds were received or utilized by them in violation of the provisions of the Act or CFTC Regulations as described herein, including pre-judgment interest from the date of such violations, plus post-judgment interest;

G.    An order requiring Defendants to pay civil penalties under the Act, to be assessed by the Court, in amounts of not more than the higher of (1) triple the monetary gain to Defendant for each violation of the Act or (2) $140,000 for each violation of the Act on or after October 23, 2008;

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

H.    An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

I.    An Order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.


Dated:  August 8, 2016                         Respectfully submitted,

/s/ Diane M. Romaniuk
Diane M. Romaniuk
(Illinois ARDC No. 0341649)

/s/ Robert Howell
Robert Howell
(Illinois ARDC No. 6286438)

/s/ Rosemary Hollinger
Rosemary Hollinger
(Illinois ARDC No. 3123647)

U.S. COMMODITY FUTURES
TRADING COMMISSION
525 West Monroe Street, Suite 1100
Chicago, IL  60661
(312) 596-0541 (Romaniuk)
(312) 596-0590 (Howell)
(312) 596-0714 (facsimile)
dromaniuk@cftc.gov
rhowell@cftc.gov