Diane M. Romaniuk, Illinois Bar #0341649
dromaniuk@cftc.gov
Robert T. Howell, Illinois Bar #6286438
rhowell@cftc.gov
Rosemary Hollinger, Illinois Bar #3123647
rhollinger@cftc.gov
Attorneys for Plaintiff
U.S. Commodity Futures Trading Commission
525 W. Monroe, Suite 1100
Chicago, Illinois 60661
Tel. 312-596-0700; Fax 312-596-0714

Kent Kawakami, CA. Bar No. 149803
kent.kawakami@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
Central District of California - Civil Division
300 North Los Angeles Street, Room 7516
Los Angeles, CA 90012
Telephone: (213) 894-4858; Facsimile: (213) 894-2380
Local Counsel

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT CALIFORNIA
## SOUTHERN DIVISION

_____

|  |  |
|---|---|
|  | Case 8:16-cv-01461 AG-JCG |
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION | |
|  | Hon. Andrew J. Guilford |
| Plaintiff, | |
|  | **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED APPLICATION FOR FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES** |
| vs. | |
| FRANK J. COLLINS, et al. | |
| Defendants. | |

1                            )     **AND OTHER**

2                            )     **STATUTORY AND**

                            )     **EQUITABLE RELIEF**

3                            )     **AGAINST DEFENDANTS**

4                            )     **GERARD SUITE AND**

                            )     **STA OPUS NR LLC**

5                            )

6                            )     Hearing Date:  November 13, 2017

7                            )     Time:  10 a.m.

                            )     Courtroom:  10D (Santa Ana)

8  _____ )

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I. PROCEDURAL HISTORY ......................................................................... 1

II. PARTIES ................................................................................................. 4

III. LEGAL STANDARD FOR ENTRY OF DEFAULT JUDGMENT ................... 6

   A. Granting a Default Judgment is within the Sound Discretion of the Court .... 6

   B. Application of the Factors Set Forth in *Eitel* Establishes that Default
      Judgment is Appropriate Here ........................................................................ 7

IV.    WELL PLED ALLEGATIONS OF THE COMPLAINT ............................ 10

V. ARGUMENT ........................................................................................... 13

   A. Suite and STA Opus Violated Section 4b(a)(1)(A)-(C) of the Act ............. 13

       1. Defendants Made Misrepresentations and Omissions .................. 14

       2. Defendants' Misrepresentations and Omissions Were Material ... 15

       3. Defendants Acted with Scienter ................................................... 16

       4. Defendants Misappropriated Customer Funds ............................. 17

       5. Defendants Sent False Statements to Pool Participants ............... 17

   B. Defendants Violated Section 4*o* of the Act .................................................. 18

   C. Defendants Violated Section 6(c)(1) of the Act and Regulation 180.1(a).... 20

   D. STA Opus Violated Section 4m(1) of the Act by Failing to Register as a
      CPO and Suite Violated Section 4k(2) of the Act by Failing to Register as an
      AP of STA Opus ............................................................................................ 22

   E. Liability Under Section 2(a)(1)(B) of the Act and Regulation 1.2 .............. 23

VI.    RELIEF SOUGHT ..................................................................................... 24

   A. A Permanent Injunction Is Warranted Herein .............................................. 24

   B. The Court Should Award Restitution to Defrauded Pool Participants and
      Impose a Civil Monetary Penalty on Defendants ......................................... 25

i

1.  Restitution ....................................................................................... 25

2.  Civil Monetary Penalty ................................................................... 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

## **Cases**

*Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980) ............................................6

*Benny v. Pipes*, 799 F.2d 489(9th Cir. 1986) ............................................................6

*CFTC ex rel. Kelly v. Skorupskas*, 605 F. Supp. 923, 932 (E.D. Mich. 1985) .17, 18

*CFTC v. American Bullion Exchange ABEX Corp.*, 2014 WL 3896023 at *9 (C.D. Cal. Aug. 7, 2014) ......................................................................................................18

*CFTC v. Baragosh*, 278 F.3d 319 (4th Cir. 2002) ...................................................15

*CFTC v. Driver*, 877 F.Supp.2d 968, 977 (C.D. Cal. 2012), *aff'd*, 585 Fed. Appx. 366 (9th Cir. Oct. 7, 2014) .........................................15, 17, 18, 19, 20, 23, 24, 25

*CFTC v. Emerald Worldwide Holdings, Inc.*, No. CV03-8339AHM, 2005 WL 1130588, at * 11 (C.D. Cal. 2005) ......................................................................27

*CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979) ..............................................24

*CFTC v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317, 1347 (S.D. Fla. 2014) ......................................................................................................................21

*CFTC v. Kraft Foods Grp., Inc.*, 153 F. Supp. 3d 996, 1007 (N.D. Ill. 2015) ........21

*CFTC v. Morse,* 762 F.2d 60, 62 (8th Cir. 1985) ....................................................17

*CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d 676, 686 (D. Md. 2000) ..............................................................................................................15, 18

*CFTC v. R.J. Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1328 (11th Cir. 2002) .........14

CFTC v. Savage, 611 F.2d 270, 285 (9th Cir. 1979) ...............................................19

*CFTC v. Wall Street Underground*, 281 F. Supp. 2d 1260, 1270 (D. Kan. 2003)..16

*CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1106 (C.D. Cal. 2003) ...........17, 18, 19

*CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346 (11th Cir. 2008)..........27

*Chu v. CFTC*, 823 F.3d 1245, 1251 (9th Cir. 2016) ...............................................16

*Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) ........................................7

*Davis v. Coopers & Lybrand*, 797 F. Supp. 797, 798 (N.D. Ill. 1992) ..................19

*Dohmen-Ramirez v. CFTC*, 837 F.2d 847, 857-58 (9th Cir. 1988) ......................23

*Drexel Burnham Lambert, Inc. v. CFTC*, 850 F.2d 742, 748 (D.C. Cir. 1988) ......16

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.1986) ...............................3, 7, 9

*Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) ...................................................7

*Franchise Holding II, LLC v. Huntington Rest. Grp., Inc.*, 375 F.3d 922, 929 (9th Cir. 2004) ...................................................................................................................7

*Geddes v. United Fin. Grp.,* 559 F.2d 557, 560 (9th Cir. 1977) ...........................6, 7

*Guzman v. Bridgepoint Educ., Inc.*, No. 11-cv-69-BAS (WVG), 2014 WL 3407242 (S.D. Cal. 2014) ..................................................................................................9

*In re Kolter*, [1994-1996 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,262 at 42,198 (CFTC Nov. 8, 1994) ......................................................................................19

*Lawrence v. CFTC*, 759 F. 2d 767, 773 (9th Cir. 1985) .........................................16

*Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999) ............................................27

*PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) 8

*Philip Morris USA Inc. v. Castworld Prods.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) ........................................................................................................................................8

*Pope v. United States*, 323 U.S. 1, 12 (1944) ..........................................................7

*Ring Central, Inc. v. Quimby*, 711 F. Supp. 2d 1048, 1057 (N.D. Cal. 2010) .........6

*Rosenthal & Co. v. CFTC*, 802 F.2d 963, 966 (7th Cir. 1986) ..............................23

*Stotler & Co. v. CFTC*, 855 F.2d 1288, 1290-91 (7th Cir. 1988) ..........................18

*Wasnick v. Refco, Inc*., 911 F.2d 345, 348 (9th Cir. 1990) ....................................16

iv

**Statutes**

7 U.S.C. § 13a-1(d)(1)(A) ...................................................................25, 26

7 U.S.C. § 13a-1(d)(3)(A) ...................................................................25, 26

7 U.S.C. § 1a(11) ...........................................................................................19

7 U.S.C. § 2(a)(1)(B) ....................................................................................23

7 U.S.C. § 6b (a)(1)(A),(C) .........................................................................13

7 U.S.C. § 6k(2) (2012) ............................................................................2, 22

7 U.S.C. § 6m(1) ............................................................................................22

7 U.S.C. § 6o(1) (2012) ................................................................................18

7 U.S.C. § 6o(1), 9(1) (2012) ........................................................................2

7 U.S.C. § 8a(2)(e) ..........................................................................................5

7 U.S.C. § 9(1) ................................................................................................20

7 U.S.C. §§ 1-26 (2012) .............................................................................1, 4

7 U.S.C. §§ 6b(a)(1)(A)-(C) ..........................................................................2

**Rules**

Fed. R. Civ. P. 55(b)(2) ..............................................................................1, 6

**Regulations**

17 C.F.R. § 1.2 ................................................................................................23

17 C.F.R. § 1.3(aa)(3) ....................................................................................20

17 C.F.R. § 143.8 ............................................................................................27

17 C.F.R. § 180.1(a) (2016) ......................................................................2, 21

81 FR 41435-01, 2016 WL 3458878 ...........................................................26

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure (Fed. R. Civ. P."), Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC") has renewed its application for entry of a default judgment for permanent injunction, civil monetary penalties and other statutory and equitable relief ("Renewed Application") against Defendants Gerard Suite, a/k/a Rawle Gerard Suite, a/k/a Jerry Suite, a/k/a Jerry Snead ("Suite") and STA Opus NR LLC ("STA Opus") (collectively "Defendants").[1]  Entry of the requested default judgments will conclude this litigation.[2]

# I.  **PROCEDURAL HISTORY**

On August 8, 2016, the CFTC filed a Complaint for Injunctive and Other Equitable Relief and Penalties Under the Commodity Exchange Act ("Complaint") (Doc. 1) against Defendants Frank J. Collins ("Collins"), Suite and STA Opus, seeking injunctive and other equitable relief for violations of the of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1-26 (2012).  The Complaint charged Defendants with violating the anti-fraud provisions of the Act and Commission

---

[1] The facts contained in this Memorandum of Law in support of Plaintiff's Application are supported by the well plead allegations of the Complaint (Doc. 1), the Declaration of CFTC Investigator Melissa Cavers, filed as Exhibit 1 to this Application, the Declarations of STA Opus customers TH, CH, and RY, filed as Exhibits 2-4 to this Application, and excerpts from Collins' Deposition, filed as Exhibit 5.

[2] Because Defendant Collins reached an agreement with the Commission to settle the enforcement action against him and the parties executed a Consent Order of Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief, which this Court entered on September 13, 2017, the requested default judgments will conclude this litigation.

1

Regulations ("Regulations"):  Sections 4b(a)(1)(A)-(C), 4*o*(1) and 6c(1), 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6*o*(1), 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2016).  The Complaint also charged STA Opus with failing to register as a commodity pool operator ("CPO") in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), and Collins and Suite with failing to register as associated persons ("APs") of the CPO in violation of Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012).

Service was effected upon Suite on August 19, 2016, pursuant to Fed. R. Civ. P. 4(e)(2)(A), by a Deputy U.S. Marshal, who delivered a copy of the summons, complaint, and related pleadings to Suite, who was in custody at the Santa Ana Jail, 62 Civic Center Plaza, Santa Ana, CA 92701. (Docs. 16, 20). Similarly, service was effected on STA Opus on August 15, 2016, pursuant to Fed. R. Civ. P. 4(e)(2)(C), by delivering a copy of the summons, complaint, and related pleadings to Richard Shellenberger, registered agent, 1201 Orange Street, Suite 600, Wilmington, DE 19801, who is authorized by law to receive service of process for STA Opus. (Doc. 18).

On October 5, 2016, the CFTC filed a Corrected Motion for Default ("Default Motion") against Defendant Suite and STA Opus, because Suite and STA Opus failed to plead or otherwise defend the Commission's enforcement action.  (Doc. 27).  On October 6, 2016, the Clerk of the United States District

Court for the Central District of California entered a Rule 55(a) Default against Suite and STA Opus.  (Doc. 28).

On August 3, 2017, the Commission filed an Application for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties and Other Statutory and Equitable Relief against Defendants, a Memorandum of Law in Support thereof, a Proposed Order for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties and Other Statutory and Equitable Relief against Defendants, and an Appendix to Plaintiff's Memorandum of Law in Support of its Application (Docs. 49 - 51-10).  On September 5, 2017, this Court entered an Order denying the Commission's Application for Default Judgment against Defendants without prejudice.  (Doc. 53).  In denying the Commission's default application, the Court noted that the Commission failed to discuss the factors listed in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) and failed to provide the declaration required by Local Rule 55-1.

Pursuant to Rule 55(b) of the Fed. R. Civ. P., the Commission now renews its Application for final default judgment against Defendants Suite and STA Opus, including a permanent injunction, permanent trading and registration bans, restitution, civil monetary penalties and other ancillary relief. As required by Local Rule 55-1, the Commission has attached, as Exhibit 1, the declaration of CFTC attorney Romaniuk, to its Renewed Application.

## II.   <u>PARTIES</u>

<u>Plaintiff Commission</u> is an independent federal regulatory agency that is charged by Congress with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1-26 (2012), and the regulations promulgated thereunder, 17 C.F.R. pt. 1-190 (2017).  (Doc. 1, p. 4, ¶ 7).

<u>Gerard Suite, a/k/a Rawle Gerard Suite, a/k/a Jerry Suite, a/k/a Jerry Snead</u>, was arrested by Federal Bureau of Investigation ("FBI") agents on May 6, 2016, and on May 25, 2016, he was indicted and charged with four counts of mail fraud, based on substantially the same facts alleged in the Commission's Complaint against Suite.  On June 5, 2017, Suite entered a guilty plea to four counts of mail fraud.  *See United States v. Suite*, Case No. SACR 16-00069, pending in the U.S. District Court, Central District of California.

Suite was registered as AP of First Commodity Corp. of Boston, a registered futures commission merchant ("FCM"), from January 1, 1982 to April 19, 1983, and as a principal and AP of Chase Commodities Inc., a registered commodity trading advisor ("CTA") and CPO, from December 2, 1985 until May 3, 1990, when his registration was revoked by the Commission.  (Doc. 1, ¶ ¶ 9-10; Ex. 1, Cavers Dec., pp. 8-9, ¶ ¶ 8-9, Att. B., pp., 19-20; Att. G, pp. 133-134).  On December 30, 1987, the National Futures Association's ("NFA") Membership Committee determined that Suite was disqualified from registration with the

Commission, pursuant to Section 8a(2)(e) of the Act, 7 U.S.C. § 8a(2)(e), based on the findings of the Arizona Corporation Commission ("ACC") that Suite engaged in fraudulent conduct in violation of the Arizona Securities Laws.[3]  (*Id.*).

Moreover, on July 25, 2006, the California Corporations Commissioner issued a Desist and Refrain Order against Suite finding that between June 2004 and January 2005, Suite offered and sold securities to an investor, without authorization, and that he did so by means of oral and written communications, including untrue statements of material facts or omitted to state material facts in order to make his statements not misleading.  (Doc. 1, ¶ 11; Ex. 1, Cavers Dec., p. 9, ¶ 10, Att. H, pp. 136-139).  Additionally, on January 18, 2011, the California Corporations Commissioner filed a Complaint against Suite and entities acting in concert with him, in Los Angeles County Superior Court, Case No. BC452780, alleging that Suite and his related entities, continued to sell unlicensed and unregistered securities as an unlicensed and unregistered Investment Advisor and by so doing, violated the California Corporations Commissioner's Order dated July 25, 2006.  (Doc. 1, ¶ 12; Ex. 1, Cavers Dec. p. 9, ¶ 11, Atts. J-K, pp. 143-171).  On January 4, 2012, the Los Angeles County Superior Court entered a permanent

---

[3]  In particular, the ACC found that Suite engaged in transactions, practices or courses of business which operated or would operate as a fraud and deceit; offered to sell or sold unregistered securities through material misrepresentations and omissions of material fact; and offered to sell or sold those securities without being registered as a dealer or salesman under the Arizona Securities Act.

injunction against Suite and the entities acting in concert with him, and ordered them to pay a total of $2.5 million in restitution and fines.  (*Id.*).

STA Opus NR LLC is a Delaware limited liability company that was formed on September 19, 2012.  (Doc. 1, ¶ 13; Ex. 1, Cavers Dec., p. 7, ¶ 5, Att. A, p. 13).  STA Opus' current status with the state of Delaware is "Not in Good Standing." (*Id*.).  STA Opus has never been registered with the Commission in any capacity. (Doc. 1, ¶ 13; Ex. 1, Cavers Dec., p. 8, ¶ 6, Att. B, pp. 21-22).

## III.   LEGAL STANDARD FOR ENTRY OF DEFAULT JUDGMENT

### A.   Granting a Default Judgment is within the Sound Discretion of the Court

After a party's default has been entered, the party who sought the default may file a motion requesting the entry of a default judgment.  Rule 55(b)(2).  *See also Ring Central, Inc. v. Quimby*, 711 F. Supp. 2d 1048, 1057 (N.D. Cal. 2010) (entry of a default judgment permitted after entry of default).  The decision to grant a motion for default judgment is within the sound discretion of the district court. Rule 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980).

Failure to make a timely answer to a properly served complaint will justify the entry of a default judgment.  *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986). In a default, the well-pleaded factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.  *Geddes v. United Fin. Grp.,* 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1,

12 (1944)); *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).  A default judgment

may be entered without a hearing on damages when the amount claimed is

liquidated or capable of ascertainment from the definite figures contained in the

documentary evidence or in detailed affidavits.  *See, e.g., Franchise Holding II,*

*LLC v. Huntington Rest. Grp., Inc.*, 375 F.3d 922, 929 (9th Cir. 2004).  Thereafter,

the judgment entered by default is treated as a conclusive and final adjudication of

the issues necessary to justify the relief awarded.  *Danning v. Lavine*, 572 F.2d

1386, 1388 (9th Cir. 1978); *Geddes*, 559 F.2d at 560.

## B.   <u>Application of the Factors Set Forth in *Eitel* Establishes that Default Judgment is Appropriate Here</u>

The Ninth Circuit has identified seven factors courts should consider when

determining whether to grant a default judgment: (1) the possibility of prejudice to

plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the

complaint; (4) the sum of money at stake in the action; (5) the possibility of a

dispute concerning the material facts; (6) whether the default was due to excusable

neglect, and; (7) the strong policy underlying the Federal Rules of Civil Procedure

favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th

Cir.1986) (hereafter "*Eitel* factors").  Here, all of these factors weigh heavily in

favor of entry of a default judgment against Defendants Suite and STA Opus.

Defendants' failure to participate in this litigation despite being served with

all the pleadings and Suite's participation in the early stages of the litigation,

means Defendants' default was not due to excusable neglect and the Commission would be prejudiced if default judgement is not entered.  In particular, early in the litigation, Defendant Suite filed a Motion to Stay Proceedings Related to Plaintiff's Motion for Discovery Material ("Motion to Stay") and a Memorandum in Support thereof.  (Docs. 34-35).   The Court set a briefing schedule on Suite's Motion (Doc. 36) and the Commission filed its Response to Suite's Motion to Stay.  (Doc. 37).  The Court denied Suite's Motion to Stay, finding that "Default of defendant Suite was entered on October 6, 2016."  (Doc. 38).  Thereafter, Suite took no action to vacate the default or participate in this litigation in any way.  When, as here, defendants fail to defend an action by moving to vacate the default and answer the complaint, a judgment on the merits is impractical, if not impossible, making the policy in favor of judgments on the merits inapplicable.  *See Philip Morris USA Inc. v. Castworld Prods.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)).  Further, Defendants' decision not to respond to the allegations in the Complaint means that there is no possibility of a dispute of material fact.

As discussed in detail below, the well-pled allegations of the Commission's Complaint establish all of the necessary elements for each of the Commission's cause of action against defendants.  Indeed, Suite was indicted and charged with four counts of mail fraud, based on substantially the same facts alleged in the

Commission's Complaint against Suite.  On June 5, 2017, Suite entered a guilty plea to four counts of mail fraud.  *See United States v. Suite*, Case No. SACR 16-00069, pending in the U.S. District Court, Central District of California.  Suite's decision to waive his right to a trial and plead guilty to an indictment based on the same fraudulent scheme alleged herein, demonstrates the merits of the Commission's substantive claim.  Moreover, the Commission has submitted a detailed declaration establishing the amount of damages that should be entered against Defendants.

Suite and STA Opus misappropriated approximately $1,127,855 of customer monies and used a portion of the misappropriated funds for personal expenses, such as travel, dining, shopping and entertainment.  The sum of money at stake in the litigation, therefore, is significant and Plaintiff CFTC, which is seeking restitution to defrauded customers in that amount, would be prejudiced if a default judgment, including restitution, were not entered against Defendants.

In sum, *Eitel* suggests that the policy favoring decisions on the merits is not an overriding policy that trumps all or even most others, but rather one that courts should consider in its exercise of discretion in entering judgment.  *Guzman v. Bridgepoint Educ., Inc.*, No. 11-cv-69-BAS (WVG), 2014 WL 3407242 (S.D. Cal. 2014) (citing *Eitel*, 782 F.2d at 1471-72).  Here, all of the *Eitel* factors weigh heavily in favor of entry of a default judgment against Suite and STA Opus.

## IV.   <u>WELL PLED ALLEGATIONS OF THE COMPLAINT</u>

From at least January 2013 through April 2016 ("relevant period"), STA Opus, through its agent, Suite, solicited prospective commodity pool participants through telephone and email solicitations.  (Doc. 1, ¶ 18; Ex. 2, TH Dec., pp. 173-175, ¶¶ 3-6; Ex. 3, CH Dec., pp. 243-244, ¶¶ 2-5; Ex. 4, RY Dec., pp. 366-367, ¶¶ 2-4).  The email solicitations contained promotional material, including monthly and yearly performance charts for STA Opus' commodity pool that falsely represented the pool's trading performance.  (Doc. 1, ¶ 20).  For example, some of the performance charts represented that the pool had an annual rate of return of 132.77% in 2012, 78.117% in 2013, 64.39% in 2014, and an 11-month rate of return of 60.05% in 2015.  (Doc. 1, ¶ 20; Ex. 4, RY Dec., p. 530).  Other performance charts represented that the pool had an annual rate of return of 132.77% in 2012, 78.117% in 2013 and 57.60% in 2014.  (Doc. 1, ¶ 20; Ex. 3, CH Dec., p. 330).  In fact, STA Opus' three commodity futures trading accounts carried at a registered FCM had a negative return, losing virtually all of the funds Defendants committed to trading.  (Doc. 1, ¶ 27; Ex. 1, Cavers Dec., p. 11, ¶ 16, Att. F, p. 131).

During Suite's telephone and email solicitations, he failed to disclose to current and prospective pool participants sanctions entered against him by the Commission and the state of California, namely:  i) that in May 1990, the

Commission revoked Suite's registration as a principal and an AP of Chase Commodities Inc., a registered CTA and CPO, and disqualified him from registration with the Commission because he engaged in fraudulent conduct in violation of the Arizona securities laws; and ii) that in January 2012, the Los Angeles County Superior Court ordered Suite, and entities acting in concert with him, to pay a total of $2.5 million in restitution and fines for conducting business as an unregistered investment advisor and for violating a previous Desist and Refrain Order issued by the California Corporations Commissioner in July 2006. (Doc. 1, ¶ 21; Ex. 3, CH Dec., p. 244, ¶ 5; Ex. 4, RY Dec., p. 367, ¶ 4).

After prospective pool participants expressed an interest in investing in STA Opus' pool, Suite sent them Account Funding Instructions.  (Doc. 1, ¶ 22; Ex. 3, CH Dec., pp. 244-45, ¶ 6, Att. B, p. 260; Ex. 4, RY Dec., p. 367, ¶ 5, Att. A, pp. 372-73).  These instructions directed prospective pool participants to send wires to an STA Opus bank account or to issue checks payable to STA Opus, at an address in Irvine, CA.  *Id*.  During the relevant period, at least 30 pool participants transferred a total of at least $1.6 million to STA Opus, for investment in the pool. (Doc. 1, ¶ 26; Ex. 1, Cavers Dec., p. 10, ¶ 13).

After pool participants invested in STA Opus' pool, Defendants caused false account statements to be sent to them that misrepresented the value of their respective interests in the pool and concealed Defendants' misappropriation of

their monies.  (Doc. 1, ¶ 29; Ex. 3, CH Dec., p. 245, ¶ 8, Att. D, pp. 271-321; Ex. 4, RY Dec., p. 369, ¶ 10, Att. F, pp., 387-534).

Suite also devised a scheme to further defraud some participants, through the use of unauthorized withdrawals from a participant's bank account.  (Doc. 1, ¶¶ 24-25).  Specifically, Suite told some pool participants that they could invest additional money with STA Opus, by sending STA Opus "voided" personal checks.  (Doc. 1, ¶¶ 24-25; Ex. 3, CH Dec., pp. 246-47, ¶¶ 12-15, Atts. H, J, pp. 349, 357-361; Ex. 4, RY Dec., pp. 368-69, ¶ 9, Att. E, p. 385).  When some participants sent Suite voided personal checks, Suite used the bank routing information and account numbers on the voided checks to have "new" checks issued that were payable to STA Opus.  (*Id.*).  While the checks Suite caused to be issued contained a statement on the face of the check that a "signature was not required," because "customer authorization was obtained," at least one customer did not authorize the checks Suite issued, thus allowing Defendants to make unauthorized withdrawals from his bank account.  (Doc. 1, ¶ 25; Ex. 3, CH Dec., pp. 246-247, ¶¶ 12-15, Atts. H-J, pp. 349, 357-361).

STA Opus opened a total of three commodity trading accounts at a registered FCM.  (Doc. 1, ¶ 27; Ex. 1, Cavers Dec., p.11, ¶ 16, Atts. E- F, pp. 39-131).  During the relevant period, a total of approximately $413,350 was deposited into the three accounts and a total of approximately $56,728 was withdrawn from

the accounts.  (Doc. 1, ¶ 27; Ex. 1, Cavers Dec., p.11, ¶ 16, Atts. E- F, pp. 39-131).

Over the life of these accounts, approximately $356,081 was lost trading

commodity futures.  *(Id.)*.

Suite and STA Opus misappropriated approximately $1,127,855 of customer

monies and returned approximately $85,657 to customers.  Defendants STA Opus

and Suite used a portion of the misappropriated funds for personal expenses, such

as travel, dining, shopping and entertainment.  (Doc. 1, ¶ 31; Ex. 1, Cavers Dec.,

pp. 10-11, ¶ ¶ 14-15).

## V.   ARGUMENT

### A.   Suite and STA Opus Violated Section 4b(a)(1)(A)-(C) of the Act

Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b (a)(1)(A),(C), makes it

unlawful for any person, in or in connection with any order to make, or the making

of, any contract of sale of any commodity in interstate commerce or for future

delivery that is made, or to be made, on or subject to the rules of a designated

contract market, for or on behalf of any other person – (A) to cheat or defraud or

attempt to cheat or defraud the other person; (B) willfully to make or cause to be

made to the other person any false report or statement; or (C) willfully to deceive

or attempt to deceive the other person by any means whatsoever in regard to any

order or contract or the disposition or execution of any order or contract, or in

regard to any act of agency performed, with respect to any order or contract for the

13

other person.  Suite and STA Opus violated Section 4b(a)(1)(A)-(C) of the Act by knowingly making material misrepresentations and omissions to pool participants, sending them false account statements and misappropriating their monies.

### 1.    Defendants Made Misrepresentations and Omissions

To establish liability for fraud based on misrepresentations, the Commission must prove that: (1) a misrepresentation, misleading statement, or omission was made; (2) that the misrepresentation, statement or omission was material; and (3) that it was made with scienter.  *CFTC v. R.J. Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1328 (11th Cir. 2002).  All three elements can be established in the instant matter.

STA Opus, through its agent Suite, sent performance charts to participants and prospective participants showing that the pool earned an annual rate of return of 78.117% in 2013, 64.39% in 2014, and an 11-month rate of return of 60.05% in 2015.  In fact, STA Opus' three commodity futures trading accounts had a negative return, losing virtually all of the funds committed to trading.

While Defendants' trading incurred a negative return, Suite failed to inform participants about these significant losses.  Similarly, Suite failed to tell participants that sanctions were entered against him revoking his registration with the Commission, enjoining him from violating the California Corporations Act,

and ordering him to pay $2.5 million in restitution and fines for conducting

business as an unregistered investment advisor in California.

**2.    Defendants' Misrepresentations and Omissions Were Material**

A statement is material if "it is substantially likely that a reasonable investor

would consider the matter important in making an investment decision." *CFTC v.

Driver*, 877 F. Supp. 2d 968, 977 (C.D. Cal. 2012) (granting summary judgment to

CFTC against CPO), *aff'd*, 585 Fed. Appx. 366 (9th Cir. Oct. 7, 2014); *accord*,

*CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d 676, 686 (D. Md.

2000), *aff'd sub nom. CFTC v. Baragosh*, 278 F.3d 319 (4th Cir. 2002).  Any fact

that enables customers to assess independently the risk inherent in their investment

and the likelihood of profit is a material fact.  *Driver*, 877 F. Supp. 2d at 978.

The misrepresentations Defendants made to pool participants were material.

A reasonable participant would want to know that Defendants' commodity trading

did not achieve the positive monthly and annual returns touted by Suite, and

instead, lost virtually all of the funds Defendants committed to trading.  Similarly,

a reasonable participant would want to know that sanctions were entered against

Suite revoking his registration with the Commission, enjoining him from violating

the California Corporations Act, and ordering him to pay $2.5 million in restitution

and fines for conducting business as an unregistered investment advisor in

1  California.  *CFTC v. Wall Street Underground*, 281 F. Supp. 2d 1260, 1270 (D.

2  Kan. 2003).

3  

4  **3.    Defendants Acted with Scienter**

5  The scienter element is established when an individual's acts are performed

6  "with knowledge of their nature and character," *Wasnick v. Refco, Inc*., 911 F.2d

7  

8  345, 348 (9th Cir. 1990) (internal quotation marks and citation omitted), and that

9  the defendant acted with more than "mere negligence, mistake or inadvertence."

10  *Id*.; *accord, Chu v. CFTC*, 823 F.3d 1245, 1251 (9th Cir. 2016).  This standard may

11  be met by demonstrating that a defendant committed the alleged wrongful acts

12  

13  "intentionally or with reckless disregard for his duties under the Act."  *Drexel*

14  *Burnham Lambert, Inc. v. CFTC*, 850 F.2d 742, 748 (D.C. Cir. 1988) (finding that

15  recklessness is sufficient to satisfy scienter requirement).  To prove that conduct is

16  intentional, the Commission need only show that a defendant's actions were

17  "intentional as opposed to accidental."  *Lawrence v. CFTC*, 759 F. 2d 767, 773

18  

19  (9th Cir. 1985).

20  

21  Suite acted with the requisite scienter.  While Collins opened STA Opus'

22  bank account and received bank account statements, he provided those statements

23  to Suite.  Suite, therefore, knew the total amount of customers' funds deposited

24  into STA Opus' bank account, and had a debit card linked to STA Opus' bank

25  account that he used to misappropriate customer monies.  Similarly, while

26  

27  

28  

16

Defendants' trading incurred a negative return, Suite never informed customers about the significant losses. Indeed, Suite even devised a scheme to have customers send STA Opus voided personal checks complete with routing information, which allowed Suite to withdraw funds directly from customers' account. Thus, the totality of the evidence establishes that Suite's actions were intentional as opposed to accidental.

### 4. Defendants Misappropriated Customer Funds

Bank records establish that Suite and STA Opus misappropriated approximately $1,127,855 of participants' funds. Suite used a portion of the misappropriated funds for personal expenses, such as travel, dining, shopping and entertainment. Misappropriation or diversion of funds entrusted for trading purposes is "willful and blatant fraudulent activity" that clearly violates Section 4b of the Act. *Driver*, 877 F. Supp. 2d at 978; *CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1106 (C.D. Cal. 2003) (default judgment granted where a defendant used investor funds for his personal use and benefit). *See also CFTC v. Morse,* 762 F.2d 60, 62 (8th Cir. 1985) (defendant's use of customer funds for personal use violated Section 4b of the Act); *CFTC ex rel. Kelly v. Skorupskas*, 605 F. Supp. 923, 932 (E.D. Mich. 1985) (same).

### 5. Defendants Sent False Statements to Pool Participants

As described above, Suite and STA Opus violated Section 4b(a)(1)(B) of the

Act, 7 U.S.C. §6b(a)(1)(B), by creating false account statements and issuing those statements to pool participants. *See, e.g., Noble Wealth*, 90 F. Supp. 2d at 686; *Skorupskas,* 605 F. Supp. at 932-933 (defendants violated Section 4b of the Act by issuing false monthly statements to customers).

### B.    Defendants Violated Section 4*o* of the Act

Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012), "broadly prohibits fraudulent conduct" by a CPO and "applies to all CPOs whether registered, required to be registered, or exempted from registration." We*inberg*, 287 F. Supp. 2d at 1107-08.  It is a "parallel" statute to Section 4b in that the same conduct that violates Section 4b can violate Section 4*o*(1).  *Stotler & Co. v. CFTC*, 855 F.2d 1288, 1290-91 (7th Cir. 1988); *Skorupskas*, 605 F. Supp. at 932-33; *Driver*, 877 F. Supp. 2d at 978 ("The same intentional or reckless misappropriations, misrepresentations, and omissions of material fact violative of section 4b of the Act … also violate section 4o(1)(A)-(B) of the Act"); *CFTC v. American Bullion Exchange ABEX Corp*., 2014 WL 3896023 at *9 (C.D. Cal. Aug. 7, 2014) (granting partial summary judgment in favor of CFTC).

However, Section 4*o*(1) of the Act differs from Section 4b in three material respects.  First, it requires "the use of the mails or any means or instrumentality of interstate commerce."  Second, Section 4*o*(1) is concerned with fraud and misrepresentations only by CPOs and CTAs.  *Davis v. Coopers & Lybrand*, 797 F.

1   Supp. 797, 798 (N.D. Ill. 1992).  Third, "[a]lthough scienter must be proved to

2   establish a violation of section 4b and section 4*o*(1)(A), it is not necessary to

3   establish a violation of section 4*o*(1)(B)."  *In re Kolter*, CFTC No. 93-19, 1994

4   WL 621595, at *7, [1994-1996 Transfer Binder] Comm. Fut. L. Rep. (CCH)

5   ¶ 26,262 at 42,198 (CFTC Nov. 8, 1994) (aff'g grant of summary disposition);

6   *accord, Driver*, 877 F. Supp. 2d at 979 ("[U]nlike sections 4b and 4o(1)(A) of the

7   Act, section 4o(1)(B) has no scienter requirement."); *Weinberg*, 287 F. Supp. 2d at

8   1108 ("[A] violation of Section 4o(1)(B) does not require scienter."); *cf. CFTC v.*

9   *Savage*, 611 F.2d 270, 285 (9th Cir. 1979) ("[W]e hold that an action for injunctive

10  relief by the CFTC under section 4O(1) requires only that the violator have acted

11  intentionally [and] . . . it is not necessary that the advisor or operator intend to

12  defraud or to practice deceit to make out a violation of section 4O(1) by the advisor

13  or operator.).

14        Section 1a(11) of the Act, 7 U.S.C. § 1a(11), defines a CPO as any person

15  engaged in a business that is of the nature of an investment trust, syndicate, or

16  similar form of enterprise, and who, in connection therewith, solicits, accepts, or

17  receives from others, funds, securities, or property, for the purpose of trading in

18  commodity interests.  Because STA Opus solicited and accepted funds from pool

19  participants, using instrumentalities of interstate commerce, including the U.S.

20  mail and interstate bank wire transfers in connection with creating a pool to trade

19

commodity futures, STA Opus acted as a CPO.

Similarly, Commission Regulation 1.3(aa)(3), 17 C.F.R. § 1.3(aa)(3), defines an "associated person of a commodity pool operator," in relevant part, as "any natural person who is associated with a CPO as: a partner, officer, employee, consultant or agent to a CPO … in any capacity which involves the solicitation of funds, securities or property for participation in a commodity pool."  Suite, on behalf of STA Opus, directly solicited funds from individuals for participation in STA Opus' commodity pool, and therefore, acted as an AP of a CPO.  In those capacities, Suite and STA Opus fraudulently solicited customers, emailed false account statements to pool participants, and misappropriated a portion of their monies.  Because their fraudulent solicitation, misappropriation and issuance of false statements violates Section 4b of the Act, by those same acts, Defendants have violated Section 4*o*(1)(A),(B) of the Act.  *Driver*, 877 F. Supp. 2d at 978.

**C.** **Defendants Violated Section 6(c)(1) of the Act and Regulation 180.1(a)**

Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), makes it unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance in contravention of any Commission rule or regulation.  In connection therewith, Regulation 180.1(a),

17 C.F.R. § 180.1(a), makes it unlawful, *inter alia*, for any person, directly or indirectly, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit on any person.

To establish liability under Section 6(c)(1) of the Act and Regulation 180.1(a), the Commission must prove that a defendant made: (1) misrepresentations or materially misleading omissions, (2) in connection with the purchase or sale of commodities, (3) with scienter. *CFTC v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317, 1347 (S.D. Fla. 2014). The level of scienter required is reckless or intentional. *CFTC v. Kraft Foods Grp., Inc*., 153 F. Supp. 3d 996, 1007 (N.D. Ill. 2015).

As described above, Defendants willfully or recklessly made numerous material misrepresentations and omissions to pool participants. Defendants also emailed account statements to customers that falsely represented the participants' respective interests in the pool and misappropriated participants' funds. They

engaged in all this conduct in connection with the purchase or sale of commodities for future delivery.  Accordingly, Defendants violated Section 6(c)(1) and Regulation 180.1(a) by the same fraudulent conduct that constitutes a violation of Section 4b of the Act.

**D.   STA Opus Violated Section 4m(1) of the Act by Failing to Register as a CPO and Suite Violated Section 4k(2) of the Act by Failing to Register as an AP of STA Opus**

STA Opus and Suite were not registered with the Commission in any capacity, although they were required to be registered.  Section 4m(1) of the Act, 7 U.S.C. § 6m(1), provides that it is unlawful for any CPO, unless registered under the Act, to make use of the mails or any means or instrumentality of interstate commerce in connection with its CPO business.  STA Opus solicited and accepted funds from pool participants, using instrumentalities of interstate commerce, including the U.S. mail and interstate bank wire transfers in connection with creating a pool to trade commodity futures.  Thus, STA Opus acted as a CPO without being registered in violation of Section 4m(1) of the Act.

Moreover, Section 4k(2) of the Act, 7 U.S.C. § 6k(2), provides that it is unlawful for any "person to be associated with a commodity pool operator as a partner, officer, employee, consultant, or agent … in any capacity that involves (i) the solicitation of funds, securities, or property for a participation in a commodity pool … unless such person is registered with the Commission under

this Act as an associated person of such commodity pool operator …."  Suite, on behalf of STA Opus, directly solicited funds from individuals for participation in STA Opus' commodity pool.  Thus, Suite violated Section 4k(2) of the Act by acting as an AP of a CPO without being registered.

### E. Liability Under Section 2(a)(1)(B) of the Act and Regulation 1.2

Under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2, strict liability is imposed upon principals for the actions of their agents acting within the scope of their employment.[4]  *Rosenthal & Co. v. CFTC*, 802 F.2d 963, 966 (7th Cir. 1986) ("[T]he statute was intended to impose strict liability, under a theory of respondeat superior, for acts within its reach."); *Dohmen-Ramirez v. CFTC*, 837 F.2d 847, 857-58 (9th Cir. 1988)  ("[B]ecause the language of section 2(a)(1) expressly imputes the agent's wrongdoing to the principal, it imposes strict liability."); *Driver*, 877 F. Supp. 3d at 980.  Suite's actions were done within the scope of his employment and operation of STA Opus. Consequently, pursuant to Section 2(a)(1)(B) of the Act, STA Opus is liable for all of Suite's violations of the Act.

---

[4] Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. 1.2 , provide that the "act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person."

23

# VI.   RELIEF SOUGHT

## A.   A Permanent Injunction Is Warranted Herein

Unlike private actions, which are rooted in the equity jurisdiction of the federal court, Commission suits for injunctive relief are creatures of statute.  The injunctive relief contemplated in Section 6c of the Act is remedial in nature, and is designed to prevent injury to the public and deter future illegal conduct.  Therefore, restrictive concepts ordinarily associated with private litigation, such as proof of irreparable injury or inadequacy of other remedies, are inapplicable.  *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979); *Driver*, 877 F. Supp. 2d at 981.  "The CFTC is entitled to a permanent injunction upon a showing that a violation has occurred and is likely to continue unless enjoined."  *Driver*, 877 F. Supp. 2d at 981.  "Determining the likelihood of future violations may involve consideration of past unlawful conduct."  *Id*.  In determining whether a "reasonable likelihood" of future violations exists, courts generally have considered the "totality of the circumstances," including the egregiousness of defendant's action, the isolated or recurrent or systematic nature of the violations, the degree of scienter involved, the defendant's recognition of the wrongfulness of the conduct, and the likelihood that the defendant's customary business activities will present opportunities for future violations.  *Id*. at 981-82.  Here, the fact that Suite fraudulently solicited pool participants and misappropriated their funds, over an almost 4 year period, and

failed to appear and defend this action, creates a "strong inference" that Defendant may continue his illegal activity in another jurisdiction.

The Commission has made a prima facie case that Suite and STA Opus violated core anti-fraud provisions of the Act and that they did so on more than one occasion.  This Court should, therefore, permanently enjoin Defendants from further violating the Act and impose on Defendants permanent trading and registration bans.

**B.    The Court Should Award Restitution to Defrauded Pool Participants and Impose a Civil Monetary Penalty on Defendants**

In any action brought under Section 6c of the Act, such as this one, a Court may impose on any person found to have violated the Act a civil monetary penalty, 7 U.S.C. § 13a-1(d)(1)(A), and "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)," 7 U.S.C. § 13a-1(d)(3)(A).  Both are appropriate here.

**1.    Restitution**

"A court may order restitution under section 6c of the Act, 7 U.S.C. § 13a-1, and the Court's inherent equitable authority." *Driver*, 877 F. Supp. 3d at 980.  "The purpose of restitution is to restore the status quo and return the parties to the positions they occupied before the transactions at issue occurred.  Thus, the amount of restitution should be calculated as the difference between what defendants obtained and the amount customers received back, but payments to

customers that exceeded their principal should not be included in this calculation." *Id*. at 981.  Here, bank records establish that Defendants received approximately $1.6 million from customers, returned only $85,657 to them, with no customer receiving more than their principal investment, and used approximately $1.25 million for personal expenses.  (Ex. 1, Cavers Dec., p. 10, ¶ 14).  Of that $1.25 million, bank records establish that approximately $122,145 was withdrawn or expended under Collins' name and that Suite and STA Opus misappropriated approximately $1,127,855.  (Ex. 1, Cavers Dec., pp. 10-11, ¶ 15).  This Court should, therefore, order Suite and STA Opus, jointly and severally, to pay restitution to defrauded STA Opus pool participants in the amount of $1,127,855, pursuant to Section 6c(d)(3)(A) of the Act, 7 U.S.C. § 13a-1(d)(3)(A).

## 2.   Civil Monetary Penalty

The Act and Regulations provide for the imposition of civil monetary penalty ("CMP"), subject to inflation adjustment.  Under Section 6c of the Act, the Court may order payment of a CMP that shall be not more than the greater of: (1) triple the monetary gain to Defendant for each violation of the Act and/or Regulations; or (2) $152,243 for each violation of the Act and/or Regulations, with regard to actions initiated after August 1, 2016.  *See* Section 6c(d)(1)(A) of the Act, 7 U.S.C. § 13a-1(d)(1)(A); Adjustment of Civil Monetary Penalties for Inflation, 81 Fed. Reg. 41435-01, 2016 WL 3458878 (June 27, 2016) , codified at

17 C.F.R. § 143.8. These provisions, therefore, expressly authorizes a CMP

assessment above and beyond any restitution award.

When evaluating CMPs under the Act, it is appropriate to consider "the

general seriousness of the violation as well as any particular mitigating or

aggravating circumstances that exist." *CFTC v. Wilshire Inv. Mgmt. Corp.*, 531

F.3d 1339, 1346 (11th Cir. 2008). "Defrauding customers is a violation of the core

provisions of the [Act]...." *Id.* A CMP may also be set in a manner that acts as a

deterrent. *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999).

The financial benefit to Defendants is the amount they misappropriated,

approximately $1,127,855. Based on the fact that Suite had prior instances of

fraudulent misconduct and that the fraud herein occurred over a lengthy period of

time, the Commission requests that the Court enter an order requiring Suite and

STA Opus, jointly and severally, to pay a CMP of $3,383,565, which represents

triple the monetary benefit to them. *CFTC v. Emerald Worldwide Holdings, Inc.*,

No. CV03-8339AHM, 2005 WL 1130588, at * 11 (C.D. Cal. 2005) (default

judgment) (CMP which was triple the monetary gain to defendants was not

unreasonable, given their misappropriation of customer funds).

Dated:  September 27, 2017                          Respectfully submitted,

                                                    **/s/ Diane M. Romaniuk**
                                                    Diane M. Romaniuk
                                                    (Illinois ARDC No. 0341649)
                                                    (Pro Hac Vice)

1

2
/s/ Robert Howell
Robert Howell
3
(Illinois ARDC No. 6286438)
(Pro Hac Vice)
4

5
U.S. COMMODITY FUTURES
TRADING COMMISSION
6
525 West Monroe Street, Suite 1100
7
Chicago, IL  60661
(312) 596-0541 (Romaniuk)
8
(312) 596-0590 (Howell)
(312) 596-0714 (facsimile)
9
dromaniuk@cftc.gov
10
rhowell@cftc.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned, an attorney with the Commodity Futures Trading Commission, certifies that she filed the below electronically, on September 27, 2017, by operation of the Court's electronic filing system ("ECF") on Darryl Sheetz, attorney for Defendant Frank Collins, Robert Howell, attorney for Plaintiff CFTC, Rosemary Hollinger, attorney for Plaintiff CFTC, and Kent Kawakami, Assistant United States Attorney, Plaintiff's Local Counsel.  I also certify that I served the below on the parties listed on the Service List on September 27, 2017, by UPS Overnight Service.

**PLAINTIFF CFTC'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST DEFENDANTS GERARD SUITE AND STA OPUS NR LLC**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: September 27, 2017          **/s/ Diane M. Romaniuk**
                                  Attorney for Plaintiff
                                  Commodity Futures Trading
                                  Commission
                                  525 W. Monroe St., Suite 1100
                                  Chicago, IL 60661
                                  (312) 596-0541
                                  dromaniuk@cftc.gov

**Service List by UPS Overnight**

Gerard Suite, a/k/a Rawle Gerard Suite
Santa Ana Jail
62 Civic Center Plaza
Santa Ana, CA 92701

STA Opus NR LLC
c/o Registered Agent
1201 Orange Street, Suite 600
Wilmington, DE 19801